**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

| | | |
|---|---|---|
| **MICHAEL ANTHONY JOHNS and** | : | |
| **BLISS LAURA JOHNS,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **CASE NUMBER:** |
| | : | |
| **RYAN BENJAMIN HALPIN, in his** | : | _____ |
| **Individual and Official Capacities,** | : | |
| **SCOTT CHITWOOD, Sheriff of** | : | |
| **Whitfield County, Georgia, in his** | : | |
| **Official Capacity only,** | : | |
| | : | |
| **Defendants.** | : | |

**COMPLAINT FOR DAMAGES**

COME NOW Michael Anthony Johns ("Tony" or "Tony Johns") and Bliss

Laura Johns ("Lori" or "Lori Johns") (together, "the Johnses"), and file their

Complaint for Damages, showing this Honorable Court as follows:

**I.  Parties, Jurisdiction, Venue**

-1-

Defendant Ryan Benjamin Halpin ("Halpin"), upon information and belief,

is a citizen of the State of Tennessee and resides at 3107 Granada Street,

Chattanooga, Tennessee 37406.

1

-2-

Defendant Scott Chitwood ("Chitwood"), Sheriff of Whitfield County, Georgia, may be served with process at 805 Professional Boulevard, Dalton, Georgia 30720.

-3-

This Court has personal jurisdiction over the Defendants herein. The acts and omissions complained of herein occurred in Whitfield County, Georgia, which is within the geographical jurisdiction of the Northern District of Georgia, Rome Division. Halpin, by maintaining employment in Whitfield County and committing tortious acts in Whitfield County, has had sufficient contacts with the State of Georgia, and with the geographical jurisdiction of the Northern District of Georgia, Rome Division, to render him subject to this Court's personal jurisdiction.

-4-

This Court has original subject matter jurisdiction, pursuant to 28 U.S.C. § 1331, over the claims herein which arise under the Constitution and laws of the United States.

-5-

This Court has ancillary jurisdiction, pursuant to 28 U.S.C. § 1367, over the state law claims herein which are substantially related to the claims herein which arise under the Constitution and laws of the United States.

-6-

Venue is proper in this judicial district under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims in this action occurred within the geographical jurisdiction of the Northern District of Georgia, Rome Division.

## II. Factual Background

-7-

At all times relevant hereto, Tony Johns and Lori Johns have been a lawfully married couple who have resided at 2614 S. Dixie Highway, Dalton, Georgia.

-8-

At all times relevant hereto, Tony has owned and operated his own small business, Tony Johns Autobody, at 1900 S. Dixie Highway, Dalton, Georgia.

-9-

At all times relevant hereto, Lori has been employed by the Whitfield County Board of Education.

3

-10-

At all times relevant hereto, Chitwood has been Sheriff of Whitfield County.

-11-

At all times relevant hereto, Halpin was an employee of Chitwood in his capacity as Sheriff of Whitfield County.

-12-

On July 13, 2023, at approximately 11:00 p.m., Tony contacted Whitfield County 911/Emergency Services to report the theft of his 2003 Hummer vehicle from his driveway at the Johnses' home.

-13-

At that time, Tony, Lori, and several of their relatives were at the Johnses' home at 2614 S. Dixie Highway, where they had been happily preparing for the wedding of the Johnses' son the next day.

-14-

Shortly thereafter, at approximately 11:07 p.m., Halpin, who was at that time on duty as a Whitfield County (Georgia) Sheriff's Deputy, was dispatched to the Johnses' home at 2614 S. Dixie Highway to investigate Tony's report of the motor vehicle theft.

4

-15-

Upon arrival at the Johnses' home at 2614 S. Dixie Highway, Halpin pulled into the entrance of the driveway and was initially met by Lori, and shortly thereafter, by Tony.

-16-

Lori and Tony engaged in conversation with Halpin, providing Halpin with information concerning the make, model, and tag of the stolen vehicle.

-17-

Lori and Tony provided Halpin with security camera footage from several hours earlier showing a person entering upon the Johnses' property and driving off with the vehicle.

-18-

Lori and Tony also provided Halpin with information concerning the Johnses' neighbor, Mayelo Puentes, who reported that he had reason to believe that his brother, Guadalupe Puentes, had stolen the vehicle.

-19-

Halpin then took a statement from Mayelo Puentes, who had come into the Johnses' driveway.

5

-20-

When Halpin had been in the Johnses' driveway for approximately sixteen (16) minutes taking statements and making notes, Tony and his neighbor, Mayelo Puentes, both observed Tony's stolen vehicle driving on S. Dixie Highway, directly past the Johnses' driveway.

-21-

Mayelo Puentes and Tony both exclaimed to Halpin that the stolen vehicle was driving past the Johnses' driveway.

-22-

Tony turned away from the roadway and started walking slowly toward his house several hundred feet away, cursing in frustration at the fact that his vehicle had been stolen and that the perpetrator had just driven the vehicle past his property.

-23-

Halpin took a couple steps toward his patrol vehicle, but upon hearing Tony curse, he turned and shouted to Tony, "Come here!"

-24-

Halpin shouted again to Tony, "Come here!" and began charging at Tony. As Halpin aggressively charged at Tony, out of surprise and fright Tony attempted to protect himself by running in the opposite direction from Halpin.

-25-

When Tony was running away from Halpin, he was not a threat to Halpin or to the community.

-26-

When Tony was running away from Halpin, Halpin had no arguable legal justification for detaining, attempting to detain, or chasing Tony.

-27-

Within just a few steps, Halpin violently tackled Tony to the ground from behind, causing visible bodily harm in the form of bleeding abrasions to Tony's knees and arm.

-28-

Halpin had no objective, law enforcement-based reason for tackling Tony.

-29-

After tackling Tony, Halpin forcibly pinned Tony to the ground and impeded his breathing.

7

-30-

Halpin told Tony that he tackled Tony because "I'm trying to do my job" and "you started cussing me."

-31-

Later, Halpin stated in an interview that "I knew Mr. Johns needed to pay for his actions of running away from me and being belligerent towards me."

-32-

Thereafter, Halpin placed Tony in handcuffs and ordered Tony into the back seat of the Whitfield County patrol vehicle Halpin was using.

-33-

The Whitfield County patrol vehicle Halpin was using at that time was designed to detain subjects in the back seat.

-34-

The Whitfield County patrol vehicle Halpin was using at that time had the center partition between the front seats and the back seat closed, effectively turning the back seat of the vehicle into a poorly ventilated capsule.

-35-

At that time, the temperature outside was nearly ninety (90) degrees Fahrenheit, and Halpin's patrol vehicle was not running or producing cooled air.

8

Accordingly, the interior of the vehicle was as hot, or hotter than, the external air. Additionally, Tony was already physically hot from the effect of being pinned to the ground under Halpin, and the exertion of struggling to breathe.

-36-

As Halpin compelled Tony into the back of his patrol vehicle and detained him there, Tony asked Halpin to roll the window down. Halpin did not do so. Instead, Halpin slammed the door immediately following Tony's request, locking Tony in the back of the patrol vehicle.

-37-

Halpin did not have even arguable probable cause to detain Tony or to arrest Tony.

-38-

Halpin kept Tony in the back of the patrol vehicle for several minutes without air conditioning, ignoring Tony's shouts from inside the car for relief from the heat and humidity.

-39-

As a result of being detained in the heat and humidity of the backseat of the county patrol car, Tony suffered bodily harm.

-40-

After several minutes of confining Tony in the back of the hot patrol car, Halpin opened the door of the patrol car and ordered Tony to exit the car, failing to offer Tony any assistance or to remove Tony's handcuffs.

-41-

Faint and soaked in sweat from being detained in the back of the patrol car, Tony weakly tumbled out from the vehicle while still in handcuffs, suffering a painful fall to the ground which caused Tony bodily harm.

-42-

Halpin's act of confining Tony in the heat and humidity of the patrol vehicle for several minutes, then permitting Tony to tumble out of the vehicle unassisted when Tony was handcuffed, was the proximate cause of the bodily harm Tony suffered.

-43-

After keeping Tony in handcuffs for several more minutes, Halpin advised Tony that he would be free to go, and released him.

-44-

Halpin then joined the chase for the stolen vehicle. He caught up to the vehicle just as the perpetrator exited the vehicle and was limping along the road outside the vehicle.

-45-

Halpin tackled the perpetrator (who was not attempting to elude at that point), cursing at him and assailing him while he lay on the ground defenseless.

-46-

After the perpetrator was handcuffed, Halpin insisted on taking the perpetrator into his patrol vehicle, stating, "I want him – he's mine."

-47-

After taking the perpetrator into custody, as Halpin discussed Tony with another sheriff's deputy, Halpin referred to Tony as a "drunk motherfucker."

-48-

Approximately two hours later, in the morning hours of Friday, July 14, Halpin returned to Tony's house and placed Tony under arrest for Obstruction (O.C.G.A. § 16-10-24) and Disorderly Conduct (O.C.G.A. § 16-11-39).

-49-

Halpin arrested Tony without a warrant and without an applicable exception as enumerated in O.C.G.A. § 17-4-20.

-50-

Halpin did not have even arguable probable cause to place Tony under arrest for Obstruction.

-51-

Considering all the surrounding circumstances, Halpin did not have a reasonable subjective basis to place Tony under arrest for Obstruction.

-52-

Tony did not commit the crime of Obstruction in the presence of Halpin.

-53-

Halpin did not have even arguable probable cause to place Tony under arrest for Disorderly Conduct.

-54-

Considering all the surrounding circumstances, Halpin did not have a reasonable subjective basis to place Tony under arrest for Disorderly Conduct.

-55-

Tony did not commit the crime of Disorderly Conduct in the presence of Halpin.

-56-

Considering all the surrounding circumstances, Halpin did not have a reasonable subjective basis to place Tony under arrest for any crime whatsoever.

-57-

During this interaction, some of Tony's relatives, without being loud, boisterous, threatening, or obstructive, questioned Halpin's actions and pleaded with him not to arrest Tony.

-58-

In response to the questioning of Tony's relatives, Halpin threatened to arrest each and every person who was present.

-59-

Halpin placed Tony under arrest.  Tony was transported to the Whitfield County Jail, where he was photographed, fingerprinted, and locked in custody.

-60-

Tony spent over five hours and 30 minutes in custody at the Whitfield County Jail.

-61-

Tony's mugshot was published and released publicly, along with a statement of the charges against him.

-62-

The events of July 13 and 14, and the publication of Tony's mugshot, caused severe emotional distress, humiliation, and anxiety to Tony and Lori, particularly in their respective roles as a small business owner and a public employee.

-63-

Prior to this incident, Halpin had the following known disciplinary incidents:

a) On August 9, 2015, Halpin used the loudspeaker system in the Whitfield County Jail to warn an African-American inmate, "Get your black ass off the cat walk."  During the subsequent investigation, other inmates complained of Halpin making racially inappropriate remarks.

b) On June 14, 2016, Halpin engaged in an aggressive verbal confrontation with a co-worker in front of an inmate.

c) In December 2018 through February 2019, Halpin was found to have been repeatedly insubordinate to a supervisor.

14

d) In May 2019, Halpin entered a hold release for an inmate but then failed to release the inmate, resulting in the inmate being unnecessarily detained for six extra days.

e) On August 7, 2021, Halpin damaged his patrol vehicle in a single-car incident.

f) On September 19, 2021, Halpin had a single-car crash in his patrol vehicle while traveling too fast for conditions (99 m.p.h.) on a wet roadway.

-64-

Almost immediately upon being forwarded the evidence and charges against Tony, the Conasauga Judicial Circuit (which includes Whitfield County) District Attorney dismissed the case and declined to proceed with the charges against Tony.

-65-

On or about December 4, 2023, Tony and Lori served a Presentment of Claims upon Whitfield County Board of Commissioners Chairperson Jevin Jensen and Whitfield County Sheriff Scott Chitwood.  A true and correct copy of the Presentment of Claims is attached hereto as Exhibit A and incorporated herein by

reference. The Presentment of Claims complies in every manner with each requirement under O.C.G.A. § 36-11-1.

-66-

On or about January 11, 2024, Tony and Lori served a Presentment of Claims upon Whitfield County Board of Commissioners Chairperson Jevin Jensen and Whitfield County Sheriff Scott Chitwood. A true and correct copy of the Presentment of Claims is attached hereto as Exhibit B and incorporated herein by reference. The Presentment of Claims complies in every manner with each requirement under O.C.G.A. § 36-11-1.

### III.    Causes of Action

**1. Violation of the Fourth Amendment Right to be Secure from Unreasonable Searches and Seizures, Under 42 U.S.C. § 1983 (By Tony, Against Halpin in his Official and Individual Capacities)**

-67-

The Johnses incorporate the paragraphs above as if the same were restated verbatim herein.

-68-

On July 13, 2023, Halpin, while acting under color of state law, deprived Tony of his right under the Fourth Amendment to the Constitution of the United

16

States of America to be secure in his person against unreasonable searches and seizures, when he unlawfully tackled and detained Tony.

-69-

In unlawfully tackling and detaining Tony, Halpin was performing discretionary acts in the course and scope of his employment with malice, oppression, willfulness, wantonness, and/or intent to harm Tony.

-70-

In unlawfully tackling and detaining Tony, Halpin violated laws and rights that were clearly established from the point of view of an objective officer, under the facts and circumstances of this particular case.

-71-

On July 14, 2023, Halpin, while acting under color of state law, deprived Tony of his right under the Fourth Amendment to the Constitution of the United States of America to be secure in his person against unreasonable searches and seizures, when he unlawfully arrested Tony and took him into custody.

-72-

In unlawfully arresting Tony and taking him into custody, Halpin was performing discretionary acts in the course and scope of his employment with malice, oppression, willfulness, wantonness, and/or intent to harm Tony.

-73-

In unlawfully arresting Tony and taking him into custody, Halpin violated laws and rights that were clearly established from the point of view of an objective officer, under the facts and circumstances of this particular case.

-74-

Due to Halpin's deprivation of Tony's right under the Fourth Amendment to the Constitution of the United States of America to be secure in his person against unreasonable searches and seizures, Halpin, in his individual and official capacities, is liable to Tony for damages in an amount to be determined in the enlightened conscience of an impartial jury.

## 2. Unlawful Retaliation Against, and Suppression of, the First Amendment Right to Freedom of Expression, Under 42 U.S.C. § 1983 (By Tony, Against Halpin in his Official and Individual Capacities)

-75-

The Johnses incorporate the paragraphs above as if the same were restated verbatim herein.

-76-

On July 13, 2023, Halpin, while acting under color of state law, unlawfully retaliated against Tony and suppressed Tony's right to freedom of expression under the First Amendment to the Constitution of the United States of America

18

when Halpin unlawfully tackled and detained Tony in retaliation against Tony for Halpin's perception that Tony had been "cussing" at him and "not letting [him] do [his] job."

-77-

In unlawfully tackling and detaining Tony, Halpin was performing discretionary acts in the course and scope of his employment with malice, oppression, willfulness, wantonness, and/or intent to harm Tony.

-78-

In unlawfully tackling and detaining Tony, Halpin violated laws and rights that were clearly established from the point of view of an objective officer, under the facts and circumstances of this particular case.

-79-

Halpin's retaliatory acts would deter a person of ordinary firmness from exercising his or her First Amendment rights.

-80-

On July 14, 2023, Halpin, while acting under color of state law, unlawfully retaliated against Tony and suppressed Tony's right to freedom of expression under the First Amendment to the Constitution of the United States of America, when he unlawfully arrested Tony and took him into custody in retaliation against

19

Tony for Halpin's perception that Tony had been "cussing" at him and "not letting [him] do [his] job."

-81-

In unlawfully arresting Tony and taking him into custody, Halpin was performing discretionary acts in the course and scope of his employment with malice, oppression, willfulness, wantonness, and/or intent to harm Tony.

-82-

In unlawfully arresting Tony and taking him into custody, Halpin violated laws and rights that were clearly established from the point of view of an objective officer, under the facts and circumstances of this particular case.

-83-

Halpin's retaliatory acts would deter a person of ordinary firmness from exercising his or her First Amendment rights.

-84-

As a result of Halpin's unlawful retaliation against Tony and suppression of Tony's right to freedom of expression under the First Amendment to the Constitution of the United States of America, Halpin, in his individual and official capacities, is liable to Tony for damages in an amount to be determined in the enlightened conscience of an impartial jury.

### 3. Assault and Battery (By Tony, Against Halpin in his Official and Individual Capacities, and Vicariously Against Chitwood in his Official Capacity)

-85-

The Johnses incorporate the paragraphs above as if the same were restated verbatim herein.

-86-

Halpin committed the torts of assault and battery by aggressively charging at Tony as Tony ran away from him, violently tackling Tony to the ground from behind, pinning Tony to the ground and impeding his breathing, and placing Tony in handcuffs, all without a lawful basis.

-87-

In aggressively charging at Tony as Tony ran away from him, violently tackling Tony to the ground from behind, pinning Tony to the ground and impeding his breathing, and placing Tony in handcuffs, all without a lawful basis, Halpin was performing discretionary acts in the course and scope of his employment with malice, oppression, willfulness, wantonness, and/or intent to harm Tony.

-88-

Due to Halpin's assault and battery upon Tony, Halpin, in his official and individual capacities, is liable to Tony for damages in an amount to be determined in the enlightened conscience of an impartial jury.

-89-

Chitwood, in his official capacity, is vicariously liable to Tony for damages caused by Halpin's assault and battery, in an amount determined in the enlightened conscience of an impartial jury.

### 4.  False Arrest and False Imprisonment (By Tony, Against Halpin in his Official and Individual Capacities, and Vicariously Against Chitwood in his Official Capacity)

-90-

The Johnses incorporate the paragraphs above as if the same were restated verbatim herein.

-91-

Halpin committed the tort of false arrest by arresting Tony without even arguable probable cause.

22

-92-

When Halpin arrested Tony, Halpin was performing discretionary acts in the course and scope of his employment with malice, oppression, willfulness, wantonness, and/or intent to harm Tony.

-93-

Halpin committed the tort of false imprisonment by unlawfully detaining Tony and depriving Tony of his personal liberty.

-94-

When Halpin falsely imprisoned Tony, Halpin was performing discretionary acts in the course and scope of his employment with malice, oppression, willfulness, wantonness, and/or intent to harm Tony.

-95-

Due to Halpin's false arrest and false imprisonment of Tony, Halpin, in his official and individual capacities, is liable to Tony for damages in an amount to be determined in the enlightened conscience of an impartial jury.

-96-

Chitwood, in his official capacity, is vicariously liable to Tony for damages caused by Halpin's false arrest and false imprisonment, in an amount to be determined in the enlightened conscience of an impartial jury.

23

## 5. Intentional Infliction of Emotional Distress (By Tony and Lori, Against Halpin in his Official and Individual Capacities, and Vicariously Against Chitwood in his Official Capacity)

-97-

The Johnses incorporate the paragraphs above as if the same were restated verbatim herein.

-98-

Halpin intentionally inflicted emotional distress upon Tony by aggressively charging at Tony, violently tackling Tony to the ground from behind, pinning Tony to the ground, placing Tony in handcuffs, and falsely arresting Tony twice, all without a lawful basis.

-99-

When Halpin intentionally inflicted emotional distress upon Tony, Halpin was performing discretionary acts in the course and scope of his employment with malice, oppression, willfulness, wantonness, and/or intent to harm Tony.

-100-

Halpin intentionally inflicted emotional distress upon Lori by falsely arresting Tony in front of her and threatening to arrest her, all without a lawful basis.

24

-101-

When Halpin intentionally inflicted emotional distress upon Lori, Halpin was performing discretionary acts in the course and scope of his employment with malice, oppression, willfulness, wantonness, and/or intent to harm Lori.

-102-

Tony and Lori suffered severe emotional distress as a result of Halpin's acts.

-103-

Due to Halpin's intentional infliction of emotional distress upon Tony and Lori, Halpin, in his official and individual capacities, is liable to Tony and Lori for damages in an amount to be determined in the enlightened conscience of an impartial jury.

-104-

Chitwood, in his official capacity, is vicariously liable to Tony and Lori for damages caused by Halpin's intentional infliction of emotional distress, in an amount to be determined in the enlightened conscience of an impartial jury.

**6.  Negligent Use of Motor Vehicle (Alternative Count) (By Tony, Vicariously Against Chitwood in his Official Capacity)**

-105-

The Johnses incorporate the paragraphs above as if the same were restated verbatim herein.

25

-106-

Halpin's confinement of Tony in the back of the patrol vehicle he was using and allowing him to collapse out of the vehicle unaided and handcuffed amounts to, at a minimum and alternatively to the preceding counts, negligent use of a motor vehicle pursuant to O.C.G.A. § 33-24-51.

-107-

Chitwood, in his official capacity, is vicariously liable to Tony for damages caused by Halpin's negligent use of a motor vehicle in an amount to be determined in the enlightened conscience of an impartial jury.

**7. Attorney Fees and Expenses of Litigation (By Tony and Lori, against Halpin in his Official and Individual Capacities, and Vicariously Against Chitwood in his Official Capacity)**

-108-

The Johnses incorporate the paragraphs above as if the same were restated verbatim herein.

-109-

Halpin acted in bad faith in the transactions set forth herein, and in particular, by aggressively charging at Tony, violently tackling Tony to the ground from behind, pinning Tony to the ground and impeding his breathing, placing Tony

26

in handcuffs, falsely arresting Tony in front of Lori, and threatening to arrest Lori, all without a lawful basis.

-110-

Due to Halpin's bad faith in the transactions set forth herein, Halpin, in his official and individual capacities, is liable to Tony and Lori for their attorney fees and expenses of litigation under O.C.G.A. § 13-6-11, in an amount to be proved upon the trial of this case.

-111-

Chitwood, in his official capacity, is vicariously liable to Tony and Lori for their attorney fees and expenses of litigation under O.C.G.A. § 13-6-11, in an amount to be proved upon the trial of this case.

-112-

Halpin, in his official and individual capacities, is liable to Tony and Lori for their attorney fees, expenses of litigation, and any expert witness fees, pursuant to 42 U.S.C. § 1988.

## 8. Punitive Damages (By Tony and Lori, against Halpin in his Official and Individual Capacities)

-113-

The Johnses incorporate the paragraphs above as if the same were restated verbatim herein.

-114-

Halpin acted in the transactions set forth herein with willful misconduct, malice, wantonness, oppression, and/or that entire want of care which would raise the presumption of conscious indifference to consequences, in particular, by aggressively charging at Tony, violently tackling Tony to the ground from behind, pinning Tony to the ground and impeding his breathing, placing Tony in handcuffs, and falsely arresting Tony in front of Lori, and threatening to arrest Lori, all without a lawful basis.

-115-

Due to Halpin's willful misconduct, malice, wantonness, oppression, and/or that entire want of care which would raise the presumption of conscious indifference to consequences in the transactions set forth herein, Halpin, in his official and individual capacities, is liable to Tony and Lori for punitive damages under O.C.G.A. § 51-12-5.1, in an amount to be proved upon the trial of this case.

## IV.  Waiver of Sovereign Immunity

-116-

The Johnses incorporate the paragraphs above as if the same were restated verbatim herein.

28

-117-

Whitfield County, on behalf of Sheriff Scott Chitwood in his official capacity and Halpin in his official capacity, has waived sovereign immunity for the above claims against Halpin and Chitwood in their official capacities by participating in the Georgia Interlocal Risk Management Agency, established by O.C.G.A. §§ 36-85-1 *et seq.*, obtaining liability insurance coverage through Liability Coverage Agreement No. 6660 to the following extent applicable to this civil action:

a) Comprehensive General Liability: $3,000,000.00.

b) Law Enforcement Liability: $3,000,000.00 per wrongful act, $6,000,000.00 annual aggregate.

c) Automobile Liability: $500,000.00 per person, $700,000 bodily injury aggregate.

d) Excess Liability- Comprehensive General Liability: $2,000,000.00 per wrongful act, $4,000,000.00 annual aggregate.

e) Excess Liability- Law Enforcement Liability: $2,000,000.00 per wrongful act, $4,000,000.00 annual aggregate.

-118-

By electing to purchase Comprehensive General Liability Coverage, Law Enforcement Liability Coverage, Excess Liability- Comprehensive General Liability Coverage, and Excess Liability- Law Enforcement Liability Coverage, Whitfield County, on behalf of Sheriff Scott Chitwood in his official capacity and Halpin in his official capacity, has waived sovereign immunity to the extent of applicable insurance coverage for the above claims against Sheriff Scott Chitwood in his official capacity and Halpin in his official capacity.

-119-

By electing to purchase Automobile Liability Coverage, Whitfield County, on behalf of Sheriff Scott Chitwood in his official capacity, has waived sovereign immunity to the extent of applicable insurance coverage for the above alternate count of negligent use of a motor vehicle against Chitwood in his official capacity.

### **Jury Demand**

Pursuant to Fed. R. Civ. P. 38, Plaintiffs hereby demand a jury trial upon all issues so triable.

**WHEREFORE**, Plaintiffs pray:

a) For process to issue, and for Defendants to be served in terms provided by law;

b) For a jury to be empaneled to try all issues so triable;

c) For judgment in Plaintiffs' favor upon all theories of recovery set forth herein, as well as pre-judgment interest;

d) For an award of costs;

e) For execution to follow upon the judgment; and

f) For such other relief as the Court deems just and proper.

This 27th day of February, 2024.

**COPPEDGE, MICHMERHUIZEN, RAYBURN |**
**Attorneys at Law**

By: s/ Stephen Michmerhuizen

508 S. Thornton Avenue          STEPHEN MICHMERHUIZEN
Dalton, Georgia 30720           GEORGIA BAR NUMBER: 107109
P: (706) 226-0040               BRYAN L. RAYBURN
F: (706) 226-0050               GEORGIA BAR NUMBER: 362738
steve@coppedgefirm.com
bryan@coppedgefirm.com          COUNSEL FOR PLAINTIFFS

31

# EXHIBIT A

# EXHIBIT A

# EXHIBIT A

**C**
**M**
**R**

COPPEDGE
MICHMERHUIZEN
RAYBURN | Attorneys At Law

Warren Coppedge | Steve Michmerhuizen | Bryan Rayburn

508 South Thornton Avenue | Dalton, Georgia 30720
*p* (706)226-0040 | *f* (706)226-0050

December 4, 2023

**VIA STATUTORY OVERNIGHT SERVICE TO:**

Whitfield County Sheriff Scott Chitwood
805 Professional Boulevard
Dalton, Georgia 30720

Jevin Jensen, Chairman, Whitfield County Board of Commissioners
201 S Hamilton St 5th Floor
Dalton, Georgia 30720

**VIA HAND DELIVERY TO:**

Robert Smalley, Whitfield County Attorney
411 West Crawford Street
Dalton, Georgia 30720

**PRESENTMENT OF CLAIM UNDER O.C.G.A. § 36-11-1**

Sirs:

This law firm represents Michael Anthony Johns and Lori Johns. This letter is provided to you
in compliance with O.C.G.A. § 36-11-1, presenting claims or potential claims against: (1) former
Whitfield County Sheriff's Deputy Sergeant Ryan B. Halpin in his individual and official
capacities, and (2) Whitfield County.

**Factual Background**

The factual background of this claim is well-documented in video recording and writing. We
will not unnecessarily expand upon what is already available to you, other than to emphasize
those facts which are central to the purpose of this letter.

On July 13, 2023, Deputy Ryan Halpin was dispatched to Mr. and Ms. John's house in
reference to a motor vehicle theft. Upon arrival, Deputy Halpin took statements from Ms.
Johns and a neighbor. Mr. Johns then saw the stolen vehicle drive by the house, and
requested Deputy Halpin to give chase. Deputy Halpin declined to do so. Mr. Johns ran
toward his house to notify his wife. Deputy Halpin then inexplicably tackled Mr. Johns and
detained him in handcuffs for "cussing at me" and "not letting me do my job." Mr. Johns
received significant abrasions on his knees and his arm when he was tackled. Deputy Halpin

Scott Chitwood
Jevin Jenson
December 4, 2023
Page two of four

then locked Mr. Johns in the back of his patrol car, when the outdoor heat index was 89 degrees. Deputy Halpin kept Mr. Johns detained there, without air conditioning, for several minutes.

After Mr. Johns sat screaming in the car begging for air, Deputy Halpin finally opened the door and allowed Mr. Johns -- handcuffed, sweat-soaked, and faint -- to tumble out of the car and onto the ground. After keeping Mr. Johns in handcuffs for several more minutes, Deputy Halpin released Mr. Johns and advised him that he would not be arrested.

Deputy Halpin then joined the chase for the stolen vehicle. He caught up to the vehicle just as the suspected perpetrator exited the vehicle and was limping along the road outside the vehicle. Deputy Halpin tackled the perpetrator (who was not attempting to elude at that point), cursing at him and assailing him while he lay on the ground defenseless. The perpetrator was taken into custody.

Approximately two hours later, in the morning hours of Friday, July 14, Deputy Halpin returned to Mr. Johns' house and placed Mr. Johns under arrest for Obstruction (O.C.G.A § 16-10-24) and Disorderly Conduct (O.C.G.A § 16-11-39). During this interaction, Mr. Johns' relatives, without being loud, boisterous, or obstructive, questioned Mr. Halpin's actions. (Mr. Johns' relatives were staying at the house because Mr. Johns' son was to be married that same day.) In response, Deputy Halpin threatened to arrest each and every person who was present.

Mr. Johns was booked into the Whitfield County jail, where he spent the night. Mr. Johns was released the next day. Mr. Johns' mugshot was released to the public the next day, to the embarrassment of Mr. Johns (who runs Tony Johns Autobody in Dalton) and Ms. Johns (who is a longtime employee of Whitfield County School District).

Deputy Halpin's written reports about the incidents contain multiple false statements, which his superiors noted and confronted him about. On July 17, 2023, Deputy Halpin resigned.

Prior to this incident, Deputy Halpin had the following known disciplinary incidents:

1. On August 9, 2015, Deputy Halpin used the loudspeaker system in the Whitfield County Jail to warn an African-American inmate, "Get your black ass off the cat walk." During the subsequent investigation, other inmates complained of Deputy Halpin making racially inappropriate remarks.

2. On June 14, 2016, Deputy Halpin engaged in an aggressive verbal confrontation with a co-worker in front of an inmate.

3. In December 2018 through February 2019, Deputy Halpin was found to have been repeatedly insubordinate to a supervisor.

Scott Chitwood
Jevin Jenson
December 4, 2023
Page three of four

4. In May of 2019, Deputy Halpin entered a hold release for an inmate but then failed to release the inmate, resulting in the inmate being unnecessarily detained for six extra days.

5. On August 7, 2021, Deputy Halpin damaged his patrol vehicle in a single-car incident.

6. On September 19, 2021, Deputy Halpin had a single-car crash in his patrol vehicle while traveling too fast for conditions (99 m.p.h.) on a wet roadway.

## Legal Claims

Based on the facts above, Mr. Johns and Ms. Johns have the following legal claims:

Against former Whitfield County Sheriff's Deputy Sergeant Ryan B. Halpin:

State law claims: Deputy Halpin, acting in his official and/or his individual capacity, engaged in discretionary acts with actual malice and intent to injure, resulting in Mr. Johns having claims for assault, battery, false arrest, false imprisonment, and intentional infliction of emotional distress, and Ms. Johns having a claim for intentional infliction of emotional distress.

Federal claims: Deputy Halpin, acting under color of law under 42 U.S.C. § 1983, perpetrated upon Mr. Johns an unlawful seizure, an unlawful detention, and an unlawful retaliation against Mr. Johns for exercising his freedom of expression.

Against Whitfield County:

State law claims: Whitfield County is liable to Mr. Johns for negligent retention and supervision. Whitfield County is also vicariously liable for the state law claims against Deputy Halpin in his official capacity.

This letter is not intended to constitute a full statement of all facts, rights, claims, or defenses relating to this matter, nor is it intended, nor should it be construed, as a waiver, release, or relinquishment of any rights or remedies available to my clients, whether legal or equitable, all of which are hereby expressly reserved.

## Offer to Compromise Claim

Please consider this letter as an opportunity to amicably resolve all claims of Mr. and Ms. Johns in exchange for payment of the total amount of $625,000.00 (six hundred twenty-five thousand dollars). If this offer of compromise is rejected, then please be aware that we intend to file a civil action on behalf of Mr. and Ms. Johns against Deputy Halpin and Whitfield County.

Scott Chitwood
Jevin Jenson
December 4, 2023
Page four of four

## Spoliation Notice

This letter is also a formal demand for the preservation of all evidence relating to the incident in question. If you fail to preserve and maintain all related evidence, Mr. and Ms. Johns will be given the legal presumption that the destroyed evidence would have been harmful to your defense of this case. Further, if you fail to preserve and maintain all related evidence, we will seek all sanctions available under the law.

## Request for Insurance Information

Pursuant to O.C.G.A. § 33-3-28(a)(2), please disclose to this firm, within thirty (30) days of your receipt of this letter, the identity of each known insurer who may provide coverage for the incident in question, including Whitfield County's general liability insurer and its motor vehicle liability insurer under O.C.G.A. § 33-24-51 (see *McBrayer v. Scarbrough*, No. S22G1152, 2023 WL 6611019 (Ga. Oct. 11, 2023)) (injury resulting from detention in patrol car arose from deputies' alleged negligent "use" of a covered motor vehicle, as required for insurance coverage and waiver of sovereign immunity).

Sincerely,

**COPPEDGE, MICHMERHUIZEN, RAYBURN | Attorneys at Law**

Steve Michmerhuizen

cc: Clients

 Shipment Receipt

## Address Information

**Ship to:**  
Jevin Jensen  
Whitfield County Board os Commissio  
201 S. Hamilton St, 5th floor  

DALTON,  GA  
30720  
US  
7062757500  

**Ship from:**  
Steve Michmerhuizen  
Coppedge & Associates  
508 S. Thornton Ave.  

Dalton,  GA  
30720  
US  
7062260040  

## Shipment Information:
Tracking no.: 774343439551  
Ship date: 12/04/2023  
Estimated shipping charges:  31.32 USD  

## Package Information
Pricing option: FedEx Standard Rate  
Service type: Standard Overnight  
Package type: FedEx Envelope  
Number of packages: 1  
Total weight: 0.10   LBS  
Declared Value: 0.00  USD  
Special Services: Adult signature required  
Pickup/Drop-off: Drop off package at FedEx location  

## Billing Information:
Bill transportation to: Coppedge & Associates-237  
Your reference:  Tony Johns  
P.O. no.:  
Invoice no.:  
Department no.:  

**Thank you for shipping online with FedEx ShipManager at fedex.com.**

## Please Note

FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1000, e.g., jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits; Consult the applicable FedEx Service Guide for details.
The estimated shipping charge may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions, and other factors. Consult the applicable FedEx Service Guide or the FedEx Rate Sheets for details on how shipping charges are calculated.

  Shipment Receipt

## Address Information

**Ship to:**                              **Ship from:**
 Sheriff Scott Chitwood            Steve Michmerhuizen
 Whitfield County Sheriff's         Coppedge & Associates
Departme
 805 Progessional Blvd             508 S. Thornton Ave.

 DALTON,  GA                        Dalton,  GA
 30720                              30720
 US                                 US
 7062781233                         7062260040

### Shipment Information:
Tracking no.: 774343349045
Ship date: 12/04/2023
Estimated shipping charges:  31.32 USD

### Package Information
Pricing option: FedEx Standard Rate
Service type: Standard Overnight
Package type: FedEx Envelope
Number of packages: 1
Total weight: 0.10   LBS
Declared Value: 0.00  USD
Special Services: Adult signature required
Pickup/Drop-off: Drop off package at FedEx location

### Billing Information:
Bill transportation to: Coppedge & Associates-237
Your reference:  Tony Johns
P.O. no.:
Invoice no.:
Department no.:

**Thank you for shipping online with FedEx ShipManager at fedex.com.**

## Please Note

FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1000, e.g., jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits; Consult the applicable FedEx Service Guide for details.
The estimated shipping charge may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions, and other factors. Consult the applicable FedEx Service Guide or the FedEx Rate Sheets for details on how shipping charges are calculated.

# EXHIBIT B

# EXHIBIT B

# EXHIBIT B

COPPEDGE
MICHMERHUIZEN
RAYBURN | Attorneys At Law

Warren Coppedge | Steve Michmerhuizen | Bryan Rayburn

508 South Thornton Avenue | Dalton, Georgia 30720
*p* (706)226-0040 | *f* (706)226-0050

January 11, 2024

**VIA STATUTORY OVERNIGHT SERVICE TO:**

Whitfield County Sheriff Scott Chitwood
805 Professional Boulevard
Dalton, Georgia 30720

Jevin Jensen, Chairman, Whitfield County Board of Commissioners
201 S Hamilton St 5th Floor
Dalton, Georgia 30720

**VIA HAND DELIVERY TO:**

Robert Smalley, Whitfield County Attorney
411 West Crawford Street
Dalton, Georgia 30720

## SUPPLEMENTAL PRESENTMENT OF CLAIM UNDER O.C.G.A. § 36-11-1

Sirs:

This law firm represents Michael Anthony Johns and Lori Johns. This letter is provided to you in compliance with O.C.G.A. § 36-11-1. presenting claims or potential claims against: (1) former Whitfield County Sheriff's Deputy Sergeant Ryan B. Halpin in his individual and official capacities, and (2) Scott Chitwood, in his official capacity only.

This letter incorporates that Presentment of Claim Under O.C.G.A. § 36-11-1 dated December 4, 2023. To the extent it is inconsistent therewith, this Supplemental Presentment of Claim supersedes and replaces the previous Presentment.

### Factual Background

The factual background of this claim is well-documented in video recording and writing. We will not unnecessarily expand upon what is already available to you, other than to emphasize those facts which are central to the purpose of this letter.

On July 13, 2023, Deputy Ryan Halpin was dispatched to Mr. and Ms. John's house in reference to a motor vehicle theft. Upon arrival, Deputy Halpin took statements from Ms. Johns and a neighbor. Mr. Johns then saw the stolen vehicle drive by the house, and requested Deputy Halpin to give chase. Deputy Halpin declined to do so. Mr. Johns ran toward his house to notify his wife. Deputy Halpin then inexplicably tackled Mr. Johns and

Scott Chitwood
Jevin Jenson
January 11, 2024
Page two of four

detained him in handcuffs for "cussing at me" and "not letting me do my job." Mr. Johns received significant abrasions on his knees and his arm when he was tackled. Deputy Halpin then locked Mr. Johns in the back of his patrol car, when the outdoor heat index was 89 degrees. Deputy Halpin kept Mr. Johns detained there, without air conditioning, for several minutes.

After Mr. Johns sat screaming in the car begging for air, Deputy Halpin finally opened the door and allowed Mr. Johns -- handcuffed, sweat-soaked, and faint -- to tumble out of the car and onto the ground. After keeping Mr. Johns in handcuffs for several more minutes, Deputy Halpin released Mr. Johns and advised him that he would not be arrested.

Deputy Halpin then joined the chase for the stolen vehicle. He caught up to the vehicle just as the suspected perpetrator exited the vehicle and was limping along the road outside the vehicle. Deputy Halpin tackled the perpetrator (who was not attempting to elude at that point), cursing at him and assailing him while he lay on the ground defenseless. The perpetrator was taken into custody.

Approximately two hours later, in the morning hours of Friday, July 14, Deputy Halpin returned to Mr. Johns' house and placed Mr. Johns under arrest for Obstruction (O.C.G.A § 16-10-24) and Disorderly Conduct (O.C.G.A § 16-11-39). During this interaction, Mr. Johns' relatives, without being loud, boisterous, or obstructive, questioned Mr. Halpin's actions. (Mr. Johns' relatives were staying at the house because Mr. Johns' son was to be married that same day.) In response, Deputy Halpin threatened to arrest each and every person who was present.

Mr. Johns was booked into the Whitfield County jail, where he spent the night. Mr. Johns was released the next day. Mr. Johns' mugshot was released to the public the next day, to the embarrassment of Mr. Johns (who runs Tony Johns Autobody in Dalton) and Ms. Johns (who is a longtime employee of Whitfield County School District).

Deputy Halpin's written reports about the incidents contain multiple false statements, which his superiors noted and confronted him about. On July 17, 2023, Deputy Halpin resigned.

Prior to this incident, Deputy Halpin had the following known disciplinary incidents:

1. On August 9, 2015, Deputy Halpin used the loudspeaker system in the Whitfield County Jail to warn an African-American inmate, "Get your black ass off the cat walk." During the subsequent investigation, other inmates complained of Deputy Halpin making racially inappropriate remarks.

2. On June 14, 2016, Deputy Halpin engaged in an aggressive verbal confrontation with a co-worker in front of an inmate.

Scott Chitwood
Jevin Jenson
January 11, 2024
Page three of four

3.  In December 2018 through February 2019, Deputy Halpin was found to have been repeatedly insubordinate to a supervisor.

4.  In May of 2019, Deputy Halpin entered a hold release for an inmate but then failed to release the inmate, resulting in the inmate being unnecessarily detained for six extra days.

5.  On August 7, 2021, Deputy Halpin damaged his patrol vehicle in a single-car incident.

6.  On September 19, 2021, Deputy Halpin had a single-car crash in his patrol vehicle while traveling too fast for conditions (99 m.p.h.) on a wet roadway.

## Legal Claims

Based on the facts above, Mr. Johns and Ms. Johns have the following legal claims:

Against former Whitfield County Sheriff's Deputy Sergeant Ryan B. Halpin:

State law claims: Deputy Halpin, in his official and his individual capacities, engaged in discretionary acts with actual malice and intent to injure, resulting in Mr. Johns having claims for assault, battery, false arrest, false imprisonment, and intentional infliction of emotional distress, and Ms. Johns having a claim for intentional infliction of emotional distress. Also, Deputy Halpin, in his official and his individual capacities, is liable for derivative claims for attorney fees, expenses of litigation, and punitive damages.

Federal claims: Deputy Halpin, in his official and his individual capacities, acting under color of law under 42 U.S.C. § 1983, engaged in discretionary acts with actual malice and intent to injure, and perpetrated upon Mr. Johns an unlawful seizure, an unlawful detention, and an unlawful retaliation against Mr. Johns for exercising his freedom of expression. Deputy Halpin, in his official and his individual capacities, is also liable for a derivative claim for attorney fees and expenses of litigation under 42 U.S.C. § 1988.

Against Sheriff Chitwood in his official capacity only:

State law claims: Sheriff Chitwood in his official capacity only is vicariously liable for the direct and derivative state law claims against Deputy Halpin in his official capacity (with the exception of the punitive damages claim). Sheriff Chitwood in his official capacity only is

Scott Chitwood
Jevin Jenson
January 11, 2024
Page four of four

also liable for an alternative claim for Halpin's negligent use of a motor vehicle (see *McBrayer v. Scarbrough*, No. S22G1152, 2023 WL 6611019 (Ga. Oct. 11, 2023).

This letter is not intended to constitute a full statement of all facts, rights, claims, or defenses relating to this matter, nor is it intended, nor should it be construed, as a waiver, release, or relinquishment of any rights or remedies available to my clients, whether legal or equitable, all of which are hereby expressly reserved.

## Offer to Compromise Claim

Please consider this letter as an opportunity to amicably resolve all claims of Mr. and Ms. Johns in exchange for payment of the total amount of $625,000.00 (six hundred twenty-five thousand dollars). This offer is made pursuant to O.C.G.A. § 51-12-14, which provides that if payment is not made within thirty (30) days of the date of your receipt of this letter by statutory overnight delivery, interest equivalent to the prime rate plus three percent will be due upon any judgment in an amount equal to or greater than the amount demanded.

## Spoliation Notice

This letter is also a formal demand for the preservation of all evidence relating to the incident in question. If you fail to preserve and maintain all related evidence, Mr. and Ms. Johns will be given the legal presumption that the destroyed evidence would have been harmful to your defense of this case. Further, if you fail to preserve and maintain all related evidence, we will seek all sanctions available under the law.

Sincerely,

**COPPEDGE, MICHMERHUIZEN, RAYBURN | Attorneys at Law**

Steve Michmerhuizen

cc:    Clients
       Jeff Phillips (jphillips@accg.org)

 **FedEx** Shipment Receipt

## Address Information

**Ship to:**
Jevin Jensen, Chairman
Whitfield County BOC
201 S. Hamilton St 5th Floor

DALTON, GA
30720
US
706-275-7500

**Ship from:**
Steve Michmerhuizen
Coppedge & Associates
508 S. Thornton Ave.

Dalton, GA
30720
US
7062260040

## Shipment Information:
Tracking no.: 774791115353
Ship date: 01/11/2024
Estimated shipping charges: 34.19 USD

## Package Information
Pricing option: FedEx Standard Rate
Service type: Standard Overnight
Package type: FedEx Envelope
Number of packages: 1
Total weight: 0.10  LBS
Declared Value: 0.00  USD
Special Services: Adult signature required
Pickup/Drop-off: Drop off package at FedEx location

## Billing Information:
Bill transportation to: Coppedge & Associates-237
Your reference: Tony Johns
P.O. no.:
Invoice no.:
Department no.:

**Thank you for shipping online with FedEx ShipManager at fedex.com.**

## Please Note

FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1000, e.g., jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits; Consult the applicable FedEx Service Guide for details.
The estimated shipping charge may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions, and other factors. Consult the applicable FedEx Service Guide or the FedEx Rate Sheets for details on how shipping charges are calculated.

 Shipment Receipt

## Address Information

**Ship to:**
Sheriff Scott Chitwood
Whitfield County Sheriff's Dept.
805 Professional Blvd

DALTON, GA
30720
US
7062781233

**Ship from:**
Steve Michmerhuizen
Coppedge & Associates

508 S. Thornton Ave.

Dalton, GA
30720
US
7062260040

## Shipment Information:
Tracking no.: 774790909320
Ship date: 01/11/2024
Estimated shipping charges: 34.19 USD

## Package Information
Pricing option: FedEx Standard Rate
Service type: Standard Overnight
Package type: FedEx Envelope
Number of packages: 1
Total weight: 0.10  LBS
Declared Value: 0.00  USD
Special Services: Adult signature required
Pickup/Drop-off: Drop off package at FedEx location

## Billing Information:
Bill transportation to: Coppedge & Associates-237
Your reference:  Tony Johns
P.O. no.:
Invoice no.:
Department no.:

Thank you for shipping online with FedEx ShipManager at fedex.com.

## Please Note

FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1000, e.g., jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits; Consult the applicable FedEx Service Guide for details.
The estimated shipping charge may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions, and other factors. Consult the applicable FedEx Service Guide or the FedEx Rate Sheets for details on how shipping charges are calculated.

**FedEx**

January 12, 2024

Dear Customer,

The following is the proof-of-delivery for tracking number: 774791115353

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| **Status:** | Delivered | **Delivered To:** | Shipping/Receiving |
| **Signed for by:** | J.JENSON | **Delivery Location:** | |
| **Service type:** | FedEx Standard Overnight | | |
| **Special Handling:** | Deliver Weekday;<br>Adult Signature Required | | DALTON, GA, |
| | | **Delivery date:** | Jan 12, 2024 10:32 |

**Shipping Information:**

| | | | |
|---|---|---|---|
| **Tracking number:** | 774791115353 | **Ship Date:** | Jan 11, 2024 |
| | | **Weight:** | 0.5 LB/0.23 KG |

| Recipient: | Shipper: |
|---|---|
| DALTON, GA, US, | Dalton, GA, US, |

**Reference**          Tony Johns

FedEx Express proof-of-delivery details appear below; however, no signature is currently available for this shipment.  Please check again later for a signature.

Thank you for choosing FedEx

January 12, 2024

Dear Customer,

The following is the proof-of-delivery for tracking number: 774790909320

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| **Status:** | Delivered | **Delivered To:** | Receptionist/Front Desk |
| **Signed for by:** | L.BREWER | **Delivery Location:** | 805 PROFESSIONAL BLVD |
| **Service type:** | FedEx Standard Overnight | | |
| **Special Handling:** | Deliver Weekday; Adult Signature Required | | DALTON, GA, 30720 |
| | | **Delivery date:** | Jan 12, 2024 10:04 |

---

**Shipping Information:**

| | | | |
|---|---|---|---|
| **Tracking number:** | 774790909320 | **Ship Date:** | Jan 11, 2024 |
| | | **Weight:** | 0.5 LB/0.23 KG |

**Recipient:**
Sheriff Scott Chitwood, Whitfield County Sheriff's Dept.
805 Professional Blvd
DALTON, GA, US, 30720

**Shipper:**
Steve Michmerhuizen, Coppedge & Associates
508 S. Thornton Ave.
Dalton, GA, US, 30720

**Reference**            Tony Johns



Thank you for choosing FedEx